### PFUND MCDONNELL, P.C.
#### ATTORNEYS AT LAW
___

| | | |
|---|---|---|
| DAVID T. PFUND # | 139 PROSPECT STREET<br>SECOND FLOOR<br>RIDGEWOOD, NEW JERSEY<br>07450 | MORRIS COUNTY OFFICE<br>2001 US Hwy 46<br>Suite 104<br>Parsippany, NJ 07054 |
| MARY C. MCDONNELL # | | |
| GERALD A. SHEPARD | | |
| _____ | | |
| ROBERT C. PRINGLE | Tel: (201)857-5040<br>Fax: (201) 857-5041<br>www.pfundmcdonnell.com | NEW YORK OFFICE<br>170 Old Country Road<br>Suite 608<br>Mineola, NY 11501 |
| DAVID J. GUZIK | | |
| # ALSO MEMBER OF NEW YORK BAR | | |

January 17, 2024

***Via Electronic Filing***
The Honorable Madeline Cox Arleo, U.S.D.J.
MLK Jr. Federal Bldg. & U.S Courthouse
50 Walnut Street
Newark, NJ 07101

        Re:    **Appelgren v. City of Fort Lee, et al.**
                **Docket No. 2:24-cv-08013-MCA-MAH**
                **Our File No. 129-5614**

Dear Judge Arleo:

      This office represents the Defendants, the City of Fort Lee and the Fort Lee Police Department, in the above-referenced matter. Please accept the following letter brief in lieu of a more formal submission in response to Plaintiff's opposition.

### I. The Welfare Check Was Justified by Credible Concerns for Plaintiff's Safety

      Plaintiff's claims arise from a welfare check conducted by Fort Lee Police officers dispatched to report to Plaintiff's hotel room at the Skyview Motel after Plaintiff's mother called the police to report that her son was under the care of a psychiatrist, suicidal and abusing drugs. The welfare check took place at the Skyview Motel, an area known for high crime and drug trafficking.

Case 2:24-cv-08013-MCA-MAH    Document 28    Filed 01/17/25    Page 2 of 8 PageID: 693

Appelgren v. City of Fort Lee, et al.
P a g e | 2

Plaintiff's Fourth Amendment claims must fail because the welfare check conducted by Fort Lee police officers was initiated based on credible and urgent concerns reported by Plaintiff's mother and was carried out in a manner that was brief, non-coercive, and solely focused on ensuring Plaintiff's safety. Plaintiff's allegations do not plausibly establish that the officers engaged in any unconstitutional search or seizure.

The United States Supreme Court and Third Circuit have recognized the "emergency aid" role of law enforcement, which includes conducting welfare checks to ensure an individual's safety. "[L]aw enforcement officers 'may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.'" *Michigan v. Fisher,* 130 S. Ct. 546, 548 (2009) (quoting *Brigham City v. Stuart,* 547 U.S. 398, 403 (2006)). See also *Kentucky v. King*, 131 S. Ct. 1849, 1856-58 (2011) (noting "several exigencies that may justify a warrantless search of a home" and holding that "the exigent circumstances rule justifies a warrantless search when the conduct of the police preceding the exigency is reasonable").

"[C]ertain investigative stops by police officers [a]re permissible without probable cause, as long as 'in justifying the particular intrusion [into Fourth Amendment rights] the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Karnes v. Skrutski,* 62 F.3d 485, 492 (3d Cir. 1995) (quoting *Terry v. Ohio,* 392 U.S. 1, 21 (1968)).

Plaintiff argues that Defendant's position "that their actions were justified under the 'emergency aid doctrine' or welfare check protocol lacks merit, as the facts presented show no reasonable basis for a belief in imminent harm." See Plaintiff's Opposition Brief (Doc 27), at p. 6 of 24. Plaintiff's assertion that Defendants' actions under the "emergency aid doctrine" or welfare check protocol lack merit is unsupported and ignores critical facts that justify the officers' conduct. Throughout the entirety of his opposition papers, Plaintiff fails to address, and indeed completely disregards, the fact that his mother called the police to report that her son was **under the care of a psychiatrist, suicidal and abusing drugs**. (emphasis added).

As the United States Supreme Court held in *Brigham City,* 547 U.S., at 406, law enforcement officers may enter a home without a warrant if they reasonably believe someone inside the home needed assistance. The Court held that this was reasonable because officers do not need to stand by and wait for harm to occur when

Case 2:24-cv-08013-MCA-MAH    Document 28    Filed 01/17/25    Page 3 of 8 PageID: 694

Appelgren v. City of Fort Lee, et al.
P a g e | 3

they have an immediate and reasonable belief that someone is in danger. Similarly, in this case, the officers did not have to wait for a warrant or further escalation of the situation before ensuring Plaintiff's well-being.

Based on the report from his mother, there was a reasonable belief that Plaintiff might have been in immediate danger of harming himself due to his emotional and mental state. Thus, the officers' actions were entirely reasonable under the circumstances. Plaintiff's mother's report provided a legitimate basis for law enforcement to check on Plaintiff's well-being. Ignoring such a report would have been a dereliction of duty and could have led to severe consequences if Plaintiff had indeed been in danger.

## II.     The Interaction Did Not Constitute a Search or Seizure Under the Fourth Amendment

The brief interaction described by Plaintiff does not rise to the level of a search or seizure under the Fourth Amendment. A "search" occurs when law enforcement intrudes upon an individual's reasonable expectation of privacy, and a "seizure" occurs when an individual is physically restrained or their freedom of movement is restricted. *Katz v. United States,* 389 U.S. 347, 351 (1967); *United States v. Mendenhall,* 446 U.S. 544, 554 (1980)).

### a. No Search Occurred

The officers' presence in Plaintiff's hotel room was limited to ensuring his safety. They did not rummage through Plaintiff's belongings, inspect his room, or engage in any investigative actions. Their sole purpose was to ascertain whether Plaintiff was in immediate danger to himself or others.

### b. No Seizure Occurred

Plaintiff admits that he voluntarily opened the door and spoke with the officers. There is no allegation that the officers physically restrained Plaintiff, restricted his movement, or otherwise coerced him during the interaction. The officers left the room after confirming that Plaintiff was not in immediate danger, further underscoring the non-intrusive nature of the interaction.

The interaction lasted only a brief period, was non-confrontational, and was conducted with the utmost care to address the specific concerns raised by Plaintiff's mother. Under these circumstances, the officers' actions were reasonable and do not constitute a violation of the Fourth Amendment.

Case 2:24-cv-08013-MCA-MAH   Document 28   Filed 01/17/25   Page 4 of 8 PageID: 695

Appelgren v. City of Fort Lee, et al.
P a g e | 4

> *c. Allowing Plaintiff's Claims To Proceed Would Discourage Legitimate Welfare Checks*

Allowing Plaintiff's claims to proceed would set a dangerous precedent by discouraging law enforcement from conducting welfare checks in situations where individuals may be at risk of harm. Police officers are tasked with protecting lives, and the failure to act on credible reports, such as the one provided by Plaintiff's mother, could lead to tragic consequences. The emergency aid doctrine exists to ensure that officers can act swiftly in such situations without fear of unwarranted litigation.

### III. Plaintiff's Fourth Amendment Claims Should be Dismissed

Plaintiff's argument that Defendants lacked a reasonable basis for their actions is contradicted by the credible and urgent report from Plaintiff's mother. The officers acted appropriately under the emergency aid doctrine, responding to a legitimate concern for Plaintiff's safety. Plaintiff's failure to address his mother's call and the information it conveyed undermines his claims and highlights the reasonableness of the officers' conduct. The interaction was brief, non-coercive, and focused solely on ensuring Plaintiff's well-being, falling squarely within the bounds of the Fourth Amendment. As such, Plaintiff fails to state a claim for a Fourth Amendment violation (Count 1) and his claim should be dismissed.

### IV. Plaintiff's Fourteenth Amendment Claims Are Subsumed Under the Fourth Amendment and Must Be Dismissed

Plaintiff's Fourteenth Amendment claims are misplaced because the alleged conduct—relating to the welfare check conducted by Fort Lee police officers—is properly analyzed under the Fourth Amendment, which explicitly governs claims of unreasonable searches and seizures. The Supreme Court has consistently held that where a specific constitutional provision applies (i.e., an explicit textual source), such as the Fourth Amendment, it displaces the more general protections of substantive due process under the Fourteenth Amendment. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *County of Sacramento v. Lewis,* 523 U.S. 833, 843 (1998)).

Plaintiff's Fourteenth Amendment claims are subsumed under the Fourth Amendment, as the alleged conduct concerns a welfare check, not arbitrary or conscience-shocking behavior that would implicate substantive due process protections. The officers acted reasonably and appropriately, and Plaintiff has failed to allege any facts that would support a separate claim under the Fourteenth

Amendment. Accordingly, the Fourteenth Amendment due process claims (Count 10) should be dismissed.

### V. Plaintiff's State Law Claims Mirror His Federal Claims and Should Be Dismissed as Redundant

Plaintiff's claims under the New Jersey Constitution and the New Jersey Civil Rights Act ("NJCRA") are duplicative of his federal claims under the Fourth and Fourteenth Amendments and rely on the same factual allegations. It is well-established that the protections against unreasonable searches and seizures provided by Article I, Paragraph 7 of the New Jersey Constitution are interpreted coextensively with the Fourth Amendment. Similarly, the NJCRA was modeled after 42 U.S.C. § 1983 and is analyzed under the same legal standards. *Trafton v. City of Woodbury,* 799 F. Supp. 2d 417, 444 (D.N.J. 2011) (The District of New Jersey "has repeatedly interpreted NJCRA analogously to § 1983.").

Because Plaintiff's claims under the NJCRA (Count 6) and the New Jersey Constitution (Count 7), mirror his federal claims and rely on the same facts, they are redundant and must fail if the federal claims are dismissed. As the state law claims provide no independent basis for relief, this Court should dismiss them along with the federal claims.

### VI. Plaintiff's Monell Claims Must Be Dismissed for Failure to Allege a Pattern or Practice and Deliberate Indifference

Plaintiff's Monell claims in Count Two alleging failure to train and supervise must be dismissed because they are based solely on his own isolated incident, which is insufficient to establish a pattern or practice of unconstitutional conduct by the City of Fort Lee. Additionally, Plaintiff has failed to plausibly allege deliberate indifference on the part of the municipality, a necessary element of Monell liability.

#### a. Plaintiff Fails to Allege a Pattern or Practice of Unconstitutional Conduct

To establish municipal liability under *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658 (1978), a plaintiff must demonstrate that the constitutional violation resulted from an official policy, custom, or practice. Isolated incidents are insufficient to establish a policy or practice that rises to the level of municipal liability. See *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused

Case 2:24-cv-08013-MCA-MAH    Document 28    Filed 01/17/25    Page 6 of 8 PageID: 697

Appelgren v. City of Fort Lee, et al.
P a g e | 6

by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

In this case, Plaintiff's allegations are limited to his own welfare check and do not reference any prior incidents involving similar conduct by Fort Lee police officers. A single alleged incident cannot, as a matter of law, constitute the "persistent and widespread" pattern of unconstitutional behavior required to impose Monell liability. See *Connick v. Thompson,* 563 U.S. 51, 62 (2011) (holding that proof of a single incident is generally insufficient to establish municipal liability).

Without any allegations of additional incidents or a broader pattern of misconduct, Plaintiff's claim fails to meet the threshold for establishing a municipal custom or policy under Monell.

### b. *Plaintiff Fails to Plausibly Allege Deliberate Indifference*

Municipal liability for failure to train or supervise also requires a showing of deliberate indifference on the part of the municipality. This standard demands that the municipality knew of and disregarded a known risk of constitutional violations. See *City of Canton v. Harris,* 489 U.S. 378, 388 (1989).

Plaintiff does not allege that the City of Fort Lee had prior knowledge of any risk of harm or that it ignored complaints or evidence of unconstitutional conduct by its officers. Absent allegations of prior incidents, complaints, or other evidence of a failure to address known risks, Plaintiff cannot establish deliberate indifference. See *Thomas v. Cumberland County,* 749 F.3d 217, 223 (3d Cir. 2014).

Here, the welfare check described in the Complaint was conducted in response to specific and credible concerns raised by Plaintiff's mother. Plaintiff fails to allege any facts suggesting that the municipality was deliberately indifferent to a risk of constitutional violations in such circumstances. His conclusory allegations are insufficient to satisfy the high standard for deliberate indifference required under Monell.

Plaintiff's Monell claims must be dismissed because he fails to allege any incidents beyond his own, which is insufficient to establish a pattern or practice of unconstitutional conduct. Moreover, Plaintiff has not demonstrated deliberate indifference on the part of the City of Fort Lee, as his allegations lack the necessary specificity and factual support. Accordingly, Count Two of the Complaint should be dismissed.

Case 2:24-cv-08013-MCA-MAH   Document 28   Filed 01/17/25   Page 7 of 8 PageID: 698

Appelgren v. City of Fort Lee, et al.
P a g e | 7

### VII. Plaintiff's Tort Claims Must Be Dismissed for Failure to File a Tort Claim Notice and Lack of Legal Basis

Under the New Jersey Tort Claims Act ("NJTCA"), <u>N.J.S.A</u>. 59:8-8, a plaintiff must serve a notice of claim upon the public entity within 90 days of the alleged injury as a prerequisite to filing suit. This requirement is mandatory and jurisdictional. Failure to comply bars the plaintiff from maintaining tort claims against the public entity or its employees. See *Velez v. City of Jersey City*, 180 N.J. 284, 290 (2004).

In this case, Plaintiff has not alleged, nor can he demonstrate, that he filed a tort claim notice with the City of Fort Lee or its Police Department. Because compliance with the NJTCA is a condition precedent to pursuing tort claims, Plaintiff's failure to comply mandates dismissal of the following counts:

- Count 3: Gross Negligence
- Count 4: Breach of Duty
- Count 5: Breach of Trust
- Count 8: Violation of New Jersey Tort Claims Act
- Count 9: Intentional Infliction of Emotional Distress

Additionally, Counts 4 (Breach of Duty), 5 (Breach of Trust), and 8 (Violation of the NJTCA) are not recognized causes of action in the Third Circuit or New Jersey law.

In his opposition, Plaintiff fails to address, much less dispute, the City's arguments regarding the dismissal of these tort claims. By failing to oppose these points, Plaintiff has effectively conceded them.

Therefore, the Court should dismiss Counts 3, 4, 5, 8 and 9.

### VIII. Plaintiff's Request to Amend the Complaint Should Be Denied

In his opposition, Plaintiff requests leave to amend his Complaint. This request should be denied because Plaintiff has not identified how any amendment would cure the fundamental deficiencies in his pleadings. Courts deny leave to amend where an amendment would be futile. See *Foman v. Davis*, 371 U.S. 178, 182 (1962) (listing futility as a valid reason to deny leave to amend).

Case 2:24-cv-08013-MCA-MAH   Document 28   Filed 01/17/25   Page 8 of 8 PageID: 699

Appelgren v. City of Fort Lee, et al.
P a g e | 8

## IX. Conclusion

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion to Dismiss Plaintiff's First Amended Complaint in its entirety, with prejudice. Plaintiff's claims under the Fourth and Fourteenth Amendments fail to state plausible causes of action, as the officers' actions during the welfare check were justified under the emergency aid doctrine and do not constitute unconstitutional searches or seizures. Plaintiff's Monell claims lack the necessary allegations of a pattern or practice of unconstitutional conduct or deliberate indifference on the part of the municipality. Additionally, Plaintiff's state law claims under the New Jersey Constitution and NJCRA are redundant and must fail alongside the federal claims. Plaintiff's tort claims are barred by his failure to comply with the New Jersey Tort Claims Act's notice requirement and include causes of action not recognized under New Jersey or Third Circuit law.

Moreover, Plaintiff's request to amend the Complaint should be denied because any amendment would be futile, given the fundamental deficiencies in Plaintiff's claims. Plaintiff's *pro se* status does not excuse his failure to allege sufficient facts or meet the required legal standards.

Defendants respectfully submit that dismissal of Plaintiff's Complaint, in its entirety and with prejudice, is warranted.

Respectfully submitted,

*/s/ David J. Guzik, Esq.*

DAVID J. GUZIK, ESQ.

cc:

**Via Electronic Filing**
Mark Appelgren
3718 Columbia Pike, Apt. 2
Arlington, VA 22204